UNITED STATES DISTRICT COURT          FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

                                                                                              MEMORANDUM
- against -                                                        06-CR-482 (JG)


TULIO MOLINA,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
A P P E A R A N C E S :

        BENTON J. CAMPBELL
            United States Attorney
            Eastern District of New York
            271 Cadman Plaza East
            Brooklyn, New York 11201
        By:    Tanisha Simon
            Attorney for Government

        FEDERAL DEFENDERS OF NEW YORK, INC.
            16 Court Street, 3rd Floor
            Brooklyn, NY 11201
        By:    Florian Miedel
            Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        This case illustrates an unfortunate consequence of the United States Sentencing Commission's decision to prioritize administrability over consistency in setting offense levels for crimes involving more than one controlled substance under the federal sentencing guidelines.

## BACKGROUND

        On July 20, 2006, Tulio Molina was indicted for one count of distribution and

possession of cocaine base ("crack") with intent to distribute and one count of possession of cocaine with intent to distribute. On March 2, 2007, Molina pled guilty to Count One, charging him with distributing and possessing 50 grams or more of crack with intent to distribute.

For the purposes of calculating his advisory range under the Sentencing Guidelines, Molina was held accountable for 72.1 grams of crack and 4.9 grams of cocaine. U.S.S.G. § 2D1.1(c)'s Drug Quantity Table indicates that 50 to 150 grams of crack produces a base offense level of 30. Had the 72.1 grams of crack been the only quantity of drugs Molina was accountable for, he would have had a base offense level of 30.

In mixed drug offenses, however, the Guidelines demand conversion of each quantity of drugs into the corresponding quantity of marijuana as determined by the Drug Equivalency Tables of § 2D1.1 cmt. n.10(E). These quantities are then aggregated into a total amount of "marijuana" in order to determine the base offense level. Unfortunately, the Drug Equivalency Table does not always provide actual equivalency, as illustrated in this case.

The revised crack equivalency table indicates that a quantity of crack qualifying for base offense level 30 is converted to marijuana at the proportion of 14 kilograms of marijuana per gram of crack. § 2D1.1 cmt. n.10(D)(i)(II). Thus, Molina's 72.1 grams of crack (which is at the low end of the 50-150 gram range qualifying for base offense level 30) is converted into 1009.4 kilograms of marijuana ($72.1 \times 14 = 1009.4$). 1009.4 kilograms of marijuana, in turn, qualifies for base offense level 32. § 2D1.1(c) (prescribing base offense level of 32 for "at least 1000 KG but less than 3000 KG of marihuana"). That is, the amount of marijuana "equivalent" to 72.1 grams of crack produces a base offense level two levels higher

2

just by virtue of its conversion to marijuana.

In one sense, Molina's 4.9 grams of cocaine are an afterthought. One gram of cocaine is equivalent to 200 grams of marijuana, so his 4.9 grams are equivalent to 980 grams of marijuana (4.9 × 200), which increases the amount of drugs for which he is accountable from 1009.4 kilograms of marijuana to 1010.38 kilograms of marijuana. In another sense, however, this relatively trifling quantity of cocaine has outlandishly disproportionate significance in calculating Molina's guidelines range. Merely by being a different drug, the cocaine triggered the use of the Drug Equivalency Tables, under which a quantity of crack at the low end of base offense level 30 is "equivalent" to a quantity of marijuana qualifying for base offense level 32.[1]

## DISCUSSION

The Drug Equivalency Tables produce a bizarre and unjustified outcome in this case. To grasp the absurdity of this result, it is useful to imagine that Molina had possessed, instead of the 4.9 grams of cocaine, another 4.9 grams of crack. He would have then been accountable for 77 grams of crack, comfortably within base offense level 30, not 32. Indeed, if instead of the 4.9 grams of cocaine, he had possessed *another 72.1 grams of crack*, he still would have remained at a base offense level of 30. Even after the Commission's narrowing of the crack-powder disparity in Amendment 706, crack remains treated as a significantly more serious drug than cocaine -- except here, where 4.9 grams of cocaine produce a higher sentence than would another 72.1 grams of crack.

---

[1] Molina also received a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, and a two-level downward adjustment under U.S.S.G. § 2D1.1(b)(11)'s "safety valve" provision. His eligibility for the "safety valve" adjustment also rendered the statutory mandatory minimum of 120 months inapplicable. 18 U.S.C. § 3553(f). Accordingly, his total offense level was 27, which in light of his criminal history category of I provided an advisory range of 70 to 87 months.

The reason the Drug Equivalency Tables do not produce an equivalent amount of drugs is the Commission's decision to simplify the calculation of guidelines ranges in offenses involving more than one drug. It is important to understand what an actual equivalency would be. Obviously an amount of marijuana qualifying for base offense level 32 is not equivalent to an amount of crack qualifying for base offense level 30. Nor, however, would an amount of marijuana just shy of qualifying for base offense level 32 be equivalent to an amount of crack which just barely qualifies for base offense level 30. The reason is easy to see: Adding a small amount of marijuana to an amount of marijuana at base offense level 30 but just barely below the threshold for base offense level 32 will produce base offense level 32. Adding that same small amount of marijuana to an amount of crack which itself just barely qualifies for base offense level 30 should still produce base offense level 30. Therefore, a quantity of crack just above the threshold for level 30 is not equivalent to a quantity of marijuana which is just below the threshold for level 32, because the same aggravating factor (adding a small amount of extra marijuana) produces different results.

The equivalent amount of marijuana to 72.1 grams of crack must not merely qualify for the same base offense level, but must be at the same proportional point between the top and bottom of the range of quantities qualifying for that base offense level. That is, the range of quantities of crack qualifying for base offense level 30 is 50 to 150 grams. 72.1 grams of crack exceeds the bottom of that 100-gram range by 22.1% of the range; to qualify for offense level 32, a defendant would need to be responsible for additional drugs (in crack, 77.9 grams) constituting 77.9% of the range. The amount of marijuana that is truly equivalent to 72.1 grams

4

of crack would be that quantity of marijuana which exceeds the bottom of the 300-kilogram range between the threshold for base offense level 30 (700 kilograms of marijuana) and the threshold for base offense level 32 (1000 kilograms of marijuana) by 22.1% of the range. This would be equivalent because, just as with the corresponding amount of crack, a defendant would need to be responsible for additional drugs equal to 77.9% of the range in order to qualify for base offense level 32. That is, calculating equivalency by reference to the proportion of the range for the applicable offense level is a true equivalency because equal amounts of extra drugs lead to equal results.

It is somewhat complicated to calculate equivalency in this way, because offense levels are set so that each additional gram of a drug has less weight at higher offense levels than at lower offense levels. *See* § 2D1.1; Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hof. L. Rev. 1, 27 (1988) (explaining Commission's approach to increasing quantities). Thus, while a straight proportionate conversion of drugs works within one offense level, it does not work between offense levels. Accordingly, calculating the true equivalency between a quantity of crack and a quantity of marijuana requires a multi-step process. First, determine the applicable base offense level for the quantity of crack. Second, determine the range of quantities within that base offense level by subtracting the bottom threshold for that base offense level from the threshold for the next base offense level. For crack at level 30, we obtain a 100-gram range (call it the "level 30 crack range") by subtracting 50 grams from 150 grams. Third, subtract the bottom threshold for that same base offense level for marijuana from the top end of that threshold to obtain the

5

corresponding marijuana range.  For marijuana at level 30, we obtain a 300-kilogram "level 30 marijuana range" by subtracting 700 kilograms (the threshold for base offense level 30 for marijuana) from 1000 kilograms (the threshold for base offense level 32 for marijuana).  Fourth, obtain the conversion factor between the level 30 crack range and the level 30 marijuana range by division.  300 kilograms divided by 100 grams equals a conversion factor of 3000 to 1; that is, within base offense level 30, one gram of crack is proportionately equal to 3000 grams of marijuana.  This conversion factor can of course be calculated in advance and set forth in a table for each offense level.

With the conversion factor for the applicable offense level identified, the remaining steps involve application to the defendant.  Fifth (continuing from above), determine the amount of drugs the defendant possessed above the minimum necessary to qualify for the applicable offense level (the "marginal drug quantity") by subtracting the bottom threshold for that offense level from the actual quantity of drugs possessed.  Molina's 72.1 grams minus offense level 30's bottom crack threshold of 50 grams yields the marginal crack quantity of 22.1 grams.  Sixth, multiply the marginal drug quantity by the conversion factor to obtain the marginal marijuana quantity.  Molina's marginal crack quantity of 22.1 grams times the conversion factor of 3000 equals a marginal marijuana quantity of 66,300 grams or 66.3 kilograms.  Seventh, add the marginal marijuana quantity to the bottom threshold of marijuana for that base offense level to obtain the equivalent marijuana quantity.  The bottom threshold for marijuana at level 30 is 700 kilograms, which added to Molina's 66.3 kilogram marginal marijuana quantity yields an equivalent marijuana quantity of 766.3 kilograms.  If this true

6

equivalence method had been used in Molina's case, his base offense level would have been 30,[2] his adjusted offense level would have been 25, and his final guidelines range would have been 57 to 71 months, instead of 70 to 87 months.

This method of calculating equivalency is somewhat more complex, as it requires the use of different conversion factor for each base offense level and the extra steps of subtracting out the bottom threshold of the non-marijuana drug range and adding back in the bottom threshold of the marijuana range. The use of a different conversion factor for each base offense level would be somewhat mitigated by the fact that the conversion factors could be set forth separately for each base offense level in a table, as is currently done for crack.[3] However, it would avoid aberrant results such as that produced in Molina's case.

CONCLUSION

Results such as that produced here are not only bizarre, they are unjust. The Guidelines continue to have great weight even after *United States v. Booker*, 543 U.S. 220 (2005), and its progeny. Worse, a defendant's Guidelines range being reduced is an *absolute* condition on that defendant's receipt of a sentence modification under the proposed revised § 1B1.10. A defendant responsible for 72.1 grams of crack and 4.9 grams of cocaine should be

---

[2] Even using the current Drug Equivalency Tables, 4.9 grams of cocaine would be only 980 grams of marijuana, which added to the equivalent marijuana quantity of 766.3 kilograms produces a total of 767.28 kilograms, well below the 1000-kilogram threshold for level 32. A true equivalence between the quantity of cocaine and marijuana would require accounting for the varying weights accorded each gram of cocaine at different offense levels, and would add a further layer of complexity due to the fact that 4.9 grams of cocaine only qualifies for base offense level 12, unlike the 72.1 grams of crack which qualify for base offense level 30.

[3] Of course, the conversion factors set forth for crack produce false equivalencies as in Molina's case because they attempt to simplify away the need to subtract the bottom thresholds of the applicable ranges. That is, the conversion factors are artificially inflated because they are intended to be applied to the entire quantity of drugs, not merely the marginal quantity of drugs. But since the entire quantity of drugs assigns diminishing weight to each additional gram of a drug (as opposed to the quantity of drugs within any one offense level, which has proportional weight), the conversion factor will necessarily generate some situations such as Molina's, where an "equivalent" quantity of marijuana produces a strikingly different result.

7

more favorably situated than a defendant responsible for 77 grams of crack. Yet the former defendant is ineligible for the sentence modification under 18 U.S.C. § 3582(c) that the latter defendant may receive. The disparity between a base offense level of 32 for a defendant responsible for 72.1 grams of crack and 4.9 grams of cocaine and a base offense level 30 for a defendant responsible for 77 grams of crack is certainly "unwarranted" within the meaning of the Sentencing Reform Act. 28 U.S.C. § 991(b)(1)(B). If the Commission retains its commitment to the under-remarked but questionable decision to calculate sentences based mainly on drug quantity, *see* Jon O. Newman, *The New Commission's Opportunity*, 10 Fed. Sent. R. 44 (1997) ("A better system would recognize that role in the offense is a far more significant measure of culpability than quantity"), it should consider moving to a more fine-grained and accurate system for determining equivalent quantities, even if it requires one or two more steps to calculate. Until the Commission does so, district judges should be vigilant for false equivalencies produced by the Drug Equivalency Tables.

John Gleeson, U.S.D.J.

Dated: February 28, 2008
      Brooklyn, New York